UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA BOYD, | ) | |
|       Plaintiff, | ) | |
| | ) | |
| v. | ) | 20 C 710 |
| | ) | |
| CITY OF CHICAGO and AFSCME COUNCIL 31, | ) ) ) | Judge Charles P. Kocoras M.J. Jeffrey Cole |
| | ) | |
|       Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT
CITY OF CHICAGO'S MOTION TO DISMISS**

Angela Boyd ("Ms. Boyd") hereby responds to motion to dismiss (D.I. 71) of the City of Chicago ("Chicago") as follows.

Chicago's motion to dismiss is based upon two attacks: 1) that Ms. Boyd "does not allege that the men in her same title and performing the same duties are paid more than her[;]" and 2) that she has not "plausibly pled" that Mr. Romell Shorter [a male coworker] is performing the same or substantially similar work as her." (D.I. 71 at 8).

The first point is dealt obfuscates the requirements of an Equal Pay Act claim. An employee must establish a *prima facie* case of discrimination by showing that: (1) different wages were paid to employees of the opposite sex; (2) the employees performed equal work requiring equal skill, effort, and responsibility; and (3) the employees shared similar working conditions. *Markel v. Bd. of Regents of the Univ. of Wis. Sys.*, 276 F.3d 906, 912– 13 (7th Cir. 2002)(citing *Fallon v. Ill.*, 882 F.2d 1206, 1208–09 (7th Cir. 1989)). Importantly, the *prima facie* elements simply require employees of the opposite sex. It does not require a showing that different wages were paid to "all employees of the opposite sex." Indeed, the case law is well established that just one such pay

disparity is enough to establish a prima facie case under the Equal Pay Act. Ms. Boyd need not prove – much less allege -- that she was paid less than every comparable male employee. It is enough for her to show that there is discrimination in pay with respect to one employee of the opposite sex.

In addition, Chicago's argument improperly relies upon titles and descriptions outside of the four corners of Ms. Boyd's complaint. Moreover, Chicago's focus upon titles and job listings contained in its policy statements cannot defeat Ms. Boyd's allegations about the actual work performed. Put another way, in response to the directions provided by the Court in its memorandum (D.I. 67), Ms. Boyd gathered new photographic evidence to prove that titles and policy statements were a mere pretext. Ms. Boyd's allegations, and the evidence supporting her allegations shows that Chicago's policy statements, like the titles it assigns, do not comport with it practices. Thus, Chicago's allegations about its titles or policy statements cannot defeat Ms. Boyd's claims on a motion to dismiss.

As to Chicago's second point, the attack relies upon a stilted reading referring to the specific photographic evidence cited in support of her claim. In the process, the City ignores the basic proposition that in a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff <u>and</u> construe all allegations of a complaint in the light most favorable to the plaintiff. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993)(emphasis added); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). In fact, Ms. Boyd's allegations about her observations of Mr. Shorter throughout the workday cover not just "a day" but a period of months. This is not simply a case where a concrete laborer delivered mail "one time." Rather, this is a continuous pattern where a person given a title of "concrete laborer" – apparently as a pretext for higher pay – has in fact worked as a mail deliverer dropping off and picking up packages at various

city locations for months. Given the appropriate standard as set forth above, Ms. Boyd's Second Amended Complaint sets forth at least plausible claims under the Equal Pay Act and its state law counterpart. Therefore, Chicago's motion to dismiss should be denied.

### The Legal Standard

Fed. R. Civ. P. 12(b)(6) evaluates the legal sufficiency of a plaintiff's complaint. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, <u>construe all allegations of a complaint in the light most favorable to the plaintiff</u>, and accept as true all well-pleaded facts and allegations in the complaint. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993)(emphasis added); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). To be cognizable, the factual allegations must lift a legal claim "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Chicago makes much of what is or is not permitted for purposes of judicial notice (D.I. 71 at p. 4, n.2 and 3, and p. 5, n.4), but ignores an earlier opinion from this Court cautioning against overuse of that limited exception to expanding the record for purposes of a Rule 12(b)(6) motion:

> A court can take judicial notice of matters of public record, such as court records, when ruling on a motion to dismiss, without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Gen. Elec. Capital Corp., v. Lease Resolution Corp.,* 128 F.3d 1074, 1080-81 (7th Cir. 1997). This "narrow exception" applies only to "undisputed fact[s] in the public record." *Id.* at 1081; *see also* Fed. R. Evid. 201(b)(2). Additionally, courts may take judicial notice of documents filed in another court "as long as that document is offered to show what was stated to the court rather [than] for the truth of the matter asserted." *Sledge v. Bellwood Sch. Dist. 88,* No. 09-CV-4186, 2010 WL 1579920, at *4 (N.D. Ill. Apr. 20, 2010), *aff'd,* 487 F. Appx. 313 (7th Cir. 2012) (citing *Opoka v. INS,* 94 F.3d 392, 395 (7th Cir. 1996); *see also Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994) (district court properly considered public court documents from prior state court litigation in deciding defendants' motion to dismiss for failure to state a claim).

*Felty v. Driver Solutions, LLC* 13 C 2818 at 2-3 (N.D. Ill. Oct. 30, 2013)(Kocoras, J.) In *Felty,* this Court took judicial notice of certain court rules, and the existence of certain other state court litigation, but declined to take judicial notice of any website, noting that "[d]ue to the evolving nature of websites, this Court is neither required nor inclined to take judicial notice of any website material at this time." *Id.*

Chicago's case citations to support its attempt to rely upon its own websites for describing job functions to support its motion to dismiss do not help its position. For instance, Chicago relies upon *Pickett v. Sheridan Health Care Center*, 644 F.3d 632, 648 (7th Cir. 2011), but Pickett did not involve a motion to dismiss. It was not a case where the Equal Pay Act was being asserted. Nothing in *Pickett* is controlling for the facts in the present case. Similarly, neither *Steigmann v. Democratic Party of Ill.*, 406 F.Supp.2d 975, 986 (N.D. Ill. Dec. 20, 2005) nor *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) help Chicago's position. *Denius* did not even involve a rule 12(b)(6) motion. *Steigmann* did not involve the admissibility of a job description on a website. In sum, Chicago's motion is based expanding the record to include material that should not be considered in a Rule 12(b)(6) analysis. Thus, its motion should be denied.

In contrast, the Seventh Circuit has also provided a procedural mechanism by which Ms. Boyd can, in a way, add content to her complaint after the fact in order to survive a motion to dismiss under Rule 12(b)(6). See *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). In that case, the Seventh Circuit noted the familiar rule that a Rule 12(b)(6) motion can be based only on the complaint itself, including documents attached to, or referred to in, the complaint, and information that is properly subject to judicial notice. Id. If the defendant relies on any other materials in support of her motion, and they are not excluded by the court, then the motion must be treated as one for summary judgment under Rule 56. See *id.*; Fed. R. Civ. P. 12(d).

The Seventh Circuit allowed, however, that a plaintiff opposing a Rule 12(b)(6) motion has "much more flexibility" and "may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove," without converting the motion into one for summary judgment. *Geinosky*, 675 F.3d at 745 n.1. In fact, the Seventh Circuit went so far as to suggest that in light of "the turmoil concerning civil pleading standards stirred up by" Twombly and Iqbal, a plaintiff opposing a Rule 12(b)(6) or Rule 12(c) motion "who can provide such illustration may find it prudent to do so," as well as to "explain to the district court that the materials are being submitted for illustrative purposes and should not be used to convert the motion into a Rule 56 motion for summary judgment." *Id*. Thus, Ms. Boyd sets forth the following relevant facts shown in her complaint and additional illustrative materials to show the plausible nature of her claim.

### Statement of Pleading and Facts

Ms. Boyd has been working for the Chicago since at least 2018. (Second Amended Complaint, hereinafter "2AC" at ¶6)." She works with a group formerly known as the Department of Fleet and Facility Management ("2FM") as part of its mailroom staff. *Id.* Her duties included the picking up and dropping off of mail and boxes at various City of Chicago locations. *Id.*

This is a case where a number of male city employees who have titles related to other jobs as a pretext who in fact are performing the same job as Ms. Boyd while receiving higher pay. *Id.* at ¶7. While Ms. Boyd was picking up and dropping off mail for 2FM, she learned that several men were performing substantially identical work for the City at the same time, while receiving substantially higher pay. *Id.* at ¶7. For instance, Mr. Romell Shorter, who held the title of a concrete laborer, was picking up and dropping off mail to the same various sites that 2FM served. *Id.* at ¶8.

Ms. Boyd has observed Mr. Shorter delivering mail throughout the workday. After having observed him working as a mail deliverer for some months, she took a series of photographs of Mr. Shorter performing the same work as her. On or about November 23, 2020 Ms. Boyd was able to get some pictures of Mr. Shorter delivering mail to the same places he was delivering that Ms. Boyd observed in 2019. These pictures show him delivering mail as he does every day. In fact, one of Chicago's offices has a specific mailbox that is labelled for Mr. Shorter's use (see the box labelled "Romell Pickup," below):



Chicago questions how Ms. Boyd can know how Mr. Shorter delivers the mail as his job. In fact, Ms. Boyd physically sees Mr. Shorter every day because (amongst other stops) he drops off mail <u>to her</u>. Mr. Boyd had conversations with Mr. Shorter where he stated that this is what he does all day. Ms. Boyd's supervisor asked him how long he has been delivering mail, and Mr. Shorter told him he has been doing that job for years. Nevertheless, upon receipt of this Court's dismissal order of her first amended complaint, Ms. Boyd went out <u>that week</u> to confirm that Mr. Shorter's

actual job as a mail deliverer was ongoing. As a result, Ms. Boyd obtained a second series of photos on or about May 24, 2021 to confirm that he was delivering mail throughout the work day, i.e., without performing additional duties. One such example photo showing Mr. Shorter delivering mail (the package is partially visible in his left hand) at a Chicago office that day is set forth below:



Shown below is another photo showing Mr. Shorter exiting Chicago's office (wearing a black t-shirt), with package in hand:



Thus, Mr. Shorter has performing solely an identical job to Ms. Boyd for months, regardless of his

job title of "concrete laborer." *Id.* at ¶9. In performing the same job as Ms. Boyd, Mr. Shorter was making $40.20 an hour, a substantially higher rate than Ms. Boyd. *Id.* at ¶9.

Ms. Boyd and Mr. Shorter have substantially the same qualifications and relevant experience in performing mailroom duties. *Id.* at ¶10. Ms. Boyd was performing equal work which requires equal skill, effort and responsibility. *Id.*

### Ms. Boyd is Not Required to Plead That She is Paid Less Than All Men to Support an Equal Pay Act Claim

The first and most fundamental element of a plaintiff's prima facie case is establishing that a wage disparity exists; i.e., that different wages were paid to employees of a different sex for the same work. In a case that involves just one or a handful of plaintiffs, this might only require the identification of one or more alleged "comparator" employees who are of the opposite sex and who were paid at a higher rate. This requirement is often not difficult to meet. Courts often hold that a *prima facie* case has been established if there is just one member of the opposite sex that is paid more, even where the plaintiff is better paid then most other comparable employees of the opposite sex. In *Gutierrez v. City of Converse*, No. 5:17-CV-1233-JKP, 2020 WL 156707 (W.D. Tex. Jan. 10, 2020) the District Court for the Western District of Texas underlined the minimal showing required of a plaintiff to establish a *prima facie* case of wage discrimination. In that case, a firefighter was terminated after allegedly leaving the scene of a critically ill patient without being cleared to do so. She filed suit, alleging, among other things, retaliation and sex-based pay discrimination under the Equal Pay Act. *Id.* at *1. The court acknowledged that the summary judgment evidence showed that plaintiff was better paid than all of her male peers with the exception of one. *Id.* at *3. However, just one such pay disparity is enough to establish a *prima facie* case under the Equal Pay Act. The court concluded that "the plaintiff need not prove that she was paid less than every comparable male employee. It is enough for the plaintiff to show that there

is discrimination in pay with respect to one employee of the opposite sex." *Id.* (quoting *Lenihan v. Boeing Co.*, 994 F. Supp. 776, 799 (S.D. Tex. 1998)); see also *Merrill v. Cintas Corp.*, 941 F. Supp. 1040, 1044 n.4 (D. Kan. 1996) ("the EPA, as a matter of law, does not require a plaintiff to show that she was paid less than every male employee.").

The facts pled in the present case conform to the level of pleading required by *Gutierrez, Lenihan,* and *Merrill*. Chicago cannot dispute that Mr. Shorter earns more – substantially more – than Ms. Boyd. Instead, Chicago points to a list of "unit assistants" which allegedly show a lack of discrimination in pay. As noted in the cases cited above, such evidence outside of the pleading cannot be relied upon to support a motion to dismiss. Moreover, there is nothing to show whether the other unit assistants listed in Chicago's exhibit A actually perform the same job duties as Ms. Boyd, regardless of their titles. Perhaps most important, however, is that – even if Chicago's Exhibit A were admissible – it shows that four of the five men identified on that list earn more than Ms. Boyd (Messrs. Edwards, Jackson, Pena and Smith), while both of the women of her DAIS department (Ms. Branch and Ms. French) earn the same as Ms. Boyd:

| Name | Job Titles | Department | Full or Part-Time | Salary or Hourly | Typical Hours | Annual Salary |
|---|---|---|---|---|---|---|
| BOYD, ANGELA D | UNIT ASST | DAIS | F | Salary | | $47,472.00 |
| BRANCH, MARTA | UNIT ASST | DAIS | F | Salary | | $47,472.00 |
| CINTRON, ROBERT | UNIT ASST | DAIS | F | Salary | | $43,224.00 |
| EBY, DARLENE M | UNIT ASST | FAMILY & SUPPORT | F | Salary | | $60,420.00 |
| EDWARDS, TAVARES D | UNIT ASST | DAIS | F | Salary | | $66,336.00 |
| FRENCH, KIMBERLY T | UNIT ASST | DAIS | F | Salary | | $47,472.00 |
| JACKSON, QUINCY B | UNIT ASST | DAIS | F | Salary | | $55,068.00 |
| PENA, JORGE M | UNIT ASST | DAIS | F | Salary | | $69,468.00 |
| SMITH, SEBASTIAN C | UNIT ASST | DAIS | F | Salary | | $66,336.00 |

(D.I. 71-2, Exhibit A). In other words, far from dispelling Ms. Boyd's allegations, Chicago's motion actually reinforces the plausibility of unfair treatment of Ms. Boyd in comparison to her male counterparts. Thus, under the applicable case law, Chicago's motion should be denied.

**<u>Ms. Boyd Has Set Forth A Plausible Claim</u>**

Ms. Boyd has been pursuing her claim for a year, and nothing has changed. Mr. Shorter is delivering mail daily. This is not a case where employees "have had cause to pick-up or deliver mail or supplies between locations at some point or another or temporarily under certain circumstances." Ms. Boyd has done her homework (including photographs) to establish that Mr. Shorter's job duties overall are substantially similar to hers. This is not a case where Mr. Shorter is performing additional duties, or has some special qualifications making him more qualified as a mail deliverer. She knows Mr. Shorter's duties <u>because he told her</u>. There is more than plausible basis to find an Equal Pay Act claim (and its state law equivalent) in the Second Amended Complaint. Thus, Chicago's motion to dismiss should be denied.

Finally, with respect to Ms. Boyd's prayer for relief, Ms. Boyd is not seeking punitive damages from Chicago on the presently asserted claims.

**CONCLUSION**

For the reasons stated above, Ms. Boyd respectfully requests that this Court deny Chicago's motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

            Respectfully submitted,

            VITALE, VICKREY,
            NIRO, SOLON & GASEY

         By: /s/ Arthur A. Gasey
            Arthur A. Gasey

            Attorney for Angela Boyd

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 22, 2021 the foregoing:

**PLAINTIFF'S RESPONSE TO DEFENDANT
CITY OF CHICAGO'S MOTION TO DISMISS**

was filed electronically with the Clerk of the Court for the Northern District of Illinois using the Court's Electronic Case Filing System, which will send notification to the registered participants of the ECF System as listed:

Derek R Kuhn
Kristen Woytowicz
Susan Margaret O'Keefe
City of Chicago Law Department
2 N. LaSalle Street
Suite 640
Chicago, IL 60602
(312)744-0898
Email: derek.kuhn@cityofchicago.org
kristen.woytowicz3@cityofchicago.org
Susan.OKeefe@cityofchicago.org

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

/s/     Arthur A. Gasey
***Attorney for Angela Boyd***