IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA D. BOYD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-CV-00710 |
| | ) | |
| v. | ) | Hon. Charles P. Kocoras |
| | ) | |
| CITY OF CHICAGO, et al., | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendant City of Chicago ("City"), through its attorney Celia Meza, Corporation Counsel for the City of Chicago, in further support of its Motion to Dismiss Plaintiff Angela Boyd's Second Amended Complaint (CM/ECF #70) pursuant to Federal Rule of Civil Procedure 12(b)(6), states as follows:

**I. Introduction**

In her Second Amended Complaint, Plaintiff Angela D. Boyd ("Boyd"), a Unit Assistant in the City's Department of Assets, Information and Services ("DAIS"[1]), claims the City violated both the Illinois Equal Pay Act (Count I) and the Federal Equal Pay Act (Count II) because she observed a Concrete Laborer with the Chicago Department of Transportation ("CDOT") delivering mail throughout the workday and did not see him doing specialized concrete work during the time she observed him. Second Amended Complaint ("SAC"), CM/ECF #70, at ¶¶7, 9.

On July 8, 2021, the City moved to dismiss the SAC, CM/ECF #71 ("the Motion")

---

[1] Formerly the Department of Fleet and Facility Management ("2FM").

based on Boyd's failure to plausibly allege the City violated either the Illinois or Federal Equal Pay Acts because she: (A) failed to allege sufficient facts regarding the work she does as compared to that of her alleged male comparator, that, if true, would raise her claim that their work is substantially similar beyond a speculative level; and (B) failed to plausibly allege the difference in pay between her and the alleged male comparator is based on sex because it is undisputed that the male comparator is also paid more than other men in Boyd's title at her Department and Unit, making any pay difference gender-neutral and, therefore, not actionable under either Equal Pay Act. Lastly, the City argued the punitive damages requested in the SAC are not recoverable from a municipal entity and should therefore be stricken.

In response to the Motion, Boyd argues that so long as she alleges one comparable man earns more than she does – even if others earn less – she has sufficiently plead the *prima facie* case for her EPA claims. Plaintiff's Response to the Motion, CM/ECF #72 ("Response"), at p. 9. Additionally, after challenging the City's exhibits in support of its Motion as outside the four corners of the SAC and relying on distinguishable caselaw regarding non-governmental websites to argue the exhibits should not be considered, Boyd relies on new allegations and photographs not referred to in the SAC in attempt to bolster her insufficient pleading regarding the male comparator's work. Response at pp. 5-8.

Boyd fails to address the fact that she has no idea what work her alleged comparator does for an entirely different City department when she is not personally photographing him (presumably also on her City work time). Boyd likewise fails to

2

address the irrefutable distinction between her knowledge, skills, and physical requirements to be a Unit Assistant in the mailroom with DAIS and the knowledge, skills and physical requirements to be a Concrete Laborer with CDOT. Boyd also incorrectly distinguishes the applicable caselaw on judicial notice of government documents published on their websites. Additionally, Boyd relies on distinguishable case law about EPA plaintiffs not needing to be paid more than *every* comparator of the opposite sex who is in the same title and workgroup as the plaintiff. Lastly, Boyd fails to address the City's argument that punitive damages are not recoverable against municipal entities and any such argument is now waived.

II. <u>Argument</u>

    **A. Boyd fails to plausibly allege the City violated either the Federal or the Illinois Equal Pay Acts.**

        *1.    External facts to be considered: judicial notice versus amending a complaint via response brief.*

In her Response, Boyd argues the Court should not consider the City's exhibits in support of its Motion but then proceeds to add new facts and photographs not contained in the SAC to bolster her claims. In doing so, however, Boyd misconstrues caselaw skeptical of taking judicial notice of the contents of *non-governmental* websites due to "the evolving nature of websites" with the mere availability of these documents on the City's *governmental* website. Further, Boyd's reliance on *Geinosky* to add entirely new facts to the SAC in her Response is misplaced.

<u>Judicial Notice of Information on Government Websites</u>

Citing *Felty v. Driver Solutions, LLC*, Boyd argues this Court should not take

3

judicial notice of the job descriptions because they are from a website. Response at pp. 3-4. However, as noted in *Felty*, the "narrow exception" of records to be considered on a Rule 12(b)(6) motion includes "undisputed fact[s] in the public record." *Felty v. Driver Solutions, LLC*, 13 C 2818, 2013 WL 5835712 at *3 (N.D. Ill. Oct. 30, 2013) (Kocoras, J.) Furthermore, the Court in *Felty* declined to take judicial notice of the contents and language of a *non-governmental* website, which is not the case here. "Defendants provide case law supporting their position that courts have judicially noticed websites, but these cases involved governmental websites and issues of agency, none of which directly relates to the case at bar." *Id.*; *see also Pickett v. Sheridan Health Care Center*, 644 F.3d 632, 648 (7th Cir. 2011) (recognizing the authority of a court to take judicial notice of *government websites*) (emphasis added).

Here, the City is asking the Court to take judicial notice of its employees' job descriptions, all of which were attached as exhibits to the Motion and are publicly available on the City's governmental website. Accordingly, the exhibits to the City's Motion are squarely within the narrow exception of records to be considered on Rule 12(b)(6) motions. *Pickett*, 644 F.3d at 648.

Boyd also attempts to distinguish *Pickett*, *Steigmann*, and *Denius*, the other cases upon which the City relies in attaching its employees' job descriptions to the Motion because they did not involve the exact documents or claims at issue here. Response at p. 4. However, contrary to Boyd's argument and as discussed, *supra* at p. 4, they do support the City's position that the Court may take judicial notice of

4

information from a governmental website.

Although Boyd is correct that *Denius* does not involve a Rule 12(b)(6) motion, in taking judicial notice of facts set forth in information readily available in the public domain, and thus could not be reasonably disputed, the Seventh Circuit noted that "[j]udicial notice *may be taken at any time*, including on appeal." *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (emphasis added).

In reviewing the District Court's decision on a motion for attorneys' fees, the Seventh Circuit in *Pickett* "recognized the authority of a court to take judicial notice of government websites" and held that the Consumer Price Index as listed on two government websites, which the District Court cited in its decision, "belongs to the category of public records of which a court may take judicial notice." *Pickett*, 644 F.3d at 648 (citing *Denius*, 330 F.3d at 926). The Seventh Circuit found, however, that the District Court abused its discretion by relying *sua sponte* on that independent evidence without giving the plaintiff notice of its intent to do so. *Id.* at 649. While *sua sponte* judicial notice is not at issue here, the legal principle as to judicial notice of government websites, generally, remains good law.

Lastly, in *Steignmann*, although the defendants did not include the web address from which the documents could be retrieved, the District Court granted the employer's Rule 12(b)(6) motion, which attached public employees' job descriptions, after finding that the job descriptions went to the heart of the plaintiff's claim. *Steigmann v. Democratic Party of Ill.*, 406 F.Supp.2d 975, 986 (N.D. Ill. Dec. 20, 2005) ("*Riley* makes clear that the job description should be "the pivot" upon which a case

5

like this turn.") (*citing Riley v. Blagojevich*, 2004 WL 1745748 at *1 (N.D.Ill.2004)). If anything, the fact that the job descriptions offered by the City also happen to be available on its governmental website further supports their validity. *Pickett*, 644 F.3d at 648.

<u>Amending the SAC through her Response</u>

Relying on a footnote in *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012), Boyd claims the Seventh Circuit provided a "procedural mechanism" by which Boyd can "add content to her complaint after the fact in order to survive a motion to dismiss under Rule 12(b)(6)." Response at p. 4. However, as addressed by Judge Edmond E. Chang in *Bruno v. Global Experience Specialists, Inc.*, while the Court in *Geinosky* allowed the plaintiff to reference an external newspaper article that included facts *already plead in the operative complaint* in his effort to defeat a motion to dismiss, a plaintiff should not be allowed to cure deficient pleadings by adding new facts in response to a Rule 12(b)(6) motion. *Bruno v. Global Experience Specialists, Inc.*, No. 19-cv-06710, 2020 WL 5253139, at *3 (N.D. Ill. Sep. 3, 2020). Like the unsuccessful plaintiff in *Bruno*, Boyd alleges additional facts not contained in the SAC in her Response to a Motion.

In *Bruno*, the plaintiff brought a negligence claim against two companies for injuries he sustained at work alleging one company had a "duty to use ordinary care in preventing hazardous conditions" at the workplace, but offered no facts to support a plausible inference that the company owed him a duty other than alleging the company "allowed" oil to collect on the floor. *Bruno*, 2020 WL 5253139, at *1-2.

6

Acknowledging that plaintiffs are allowed much more flexibility under the "four corners rule" in opposing a 12(b)(6) motion under certain circumstances, Judge Chang found that, unlike in *Geinosky*, the plaintiff in *Bruno* was adding facts in his Response to a Motion to Dismiss that were not alleged in the original pleading. *Id.* at *3 ("But this 'flexibility is not without limitations.'") (quoting *Heng v. Heavner, Beyers & Mihlar, L.L.C.*, 849 F.3d 348, 354 (7th Cir. 2017)). Based on the basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss, Judge Chang found the additional facts could not resolve the lack of information in the complaint. *Id.* ("The Complaint is sparse—so sparse that considering facts in the response brief as 'consistent' would amount to allowing Bruno to amend the deficient complaint.")

Like the plaintiff in *Bruno*, the problem with Boyd's claims "is not the adequacy of the evidence; rather, it is the adequacy of [her] *allegations*." *Bruno*, 2020 WL 5253139, at *3 (emphasis in original). In the SAC, the only facts Boyd alleges to support her claim that she does substantially similar work to the Concrete Laborer is: 1) they both wear steel-toed boots, use dollies, and lift heavy boxes and mail (SAC ¶11); 2) Plaintiff observed and photographed him performing mailroom duties "throughout <u>the</u> workday;" (SAC ¶¶8-9) (emphasis added); 3) Plaintiff did not observe him performing concrete work during her observation (SAC ¶12); and 4) they have the same qualifications and skills *in performing those mailroom duties*. SAC ¶10. Thus, "upon information and belief," she conclusively claims her alleged comparator does not perform additional duties or possess specialized skills as a Concrete Laborer

7

to justify his higher salary. *Id.* at ¶12. Considering Boyd's newly added facts about the timing, duration, and frequency of her observations and the photographs of mail and an individual walking with an envelope would effectively allow her to amend the deficient SAC, which the Court should disallow.

>   2.   *Boyd fails to plausibly plead she performs the same or substantially similar work as the alleged male comparator.*

Even if her newly added facts and photographs were to be considered, Boyd also fails to address the irrefutable distinction between the knowledge, skills, and physical requirements to be a Unit Assistant with DAIS exclusively delivering mail throughout various City locations and the knowledge, skills, and physical requirements necessary to be a Concrete Laborer with CDOT, thereby dooming her claims.

A Unit Assistant's essential duties with DAIS include driving a vehicle to pick up, transport, and drop off mail, materials, and supplies at various work sites and locations throughout the City. Motion at Exhibit B, Job Description for Unit Assistant. The only education, training, and experience necessary to be minimally qualified to be a Unit Assistant is "[w]illingness and ability to perform the duties of the job" and a valid Illinois drivers' license. *Id.* at p.1. The working conditions of a Unit Assistant simply include "[e]xposure to outdoor weather conditions," and the physical requirements of the Unit Assistant position include carrying up to 35 pounds, sitting, and walking. *Id.* at pp. 1-2.

In contrast, a Concrete Laborer's essential duties include a multitude of skilled labor activities (e.g., operating a pneumatic jackhammer, preparing and pouring

8

concrete) and, even if the alleged comparator's day was sporadically filled with completing other duties as assigned, the minimum qualifications to be considered for the position of Concrete Laborer require a background of skills far beyond that of a Unit Assistant. Motion at Exhibit C, Job Description for Concrete Laborer at p. 1. For example, the education, training, and experience necessary to be minimally qualified as a Concrete Laborer include "one year of work experience as a general laborer on a construction work site." *Id*. Furthermore, unlike that of a Unit Assistant, the working conditions of a Concrete Laborer could include "[e]xposure to outdoor weather conditions, [e]xposure to loud noise, fumes or dust, [and] [e]xposure to hazardous conditions (e.g. traffic, heavy machinery)," and the physical requirements include required heavy lifting (up to 100 pounds), as well as the potential operation of skid-steer loaders (e.g., Bobcats). *Id*. at pp. 1-2. Boyd's alleged comparator could not hold the title of Concrete Laborer without possessing the unique experience, skills and, and physical abilities specific to that title, which she is not required to possess in her position as a Unit Assistant.

 The job descriptions attached as exhibits in support of the Motion directly refute the plausibility of Boyd's conclusive claim that she does similar work under similar conditions to her male comparator. Even Boyd's attempt to claim the male comparator's Concrete Laborer title is "mere pretext" fails because, despite alleging she has not personally observed him performing concrete work, she fails to account for her inability to know what tasks he performs or where each day, especially given that her job requires that she travel throughout various locations. SAC, at ¶ 6. Unless

9

Boyd regularly travels in tandem with the male comparator to every location, she cannot plausibly claim the Concrete Laborer neither performs concrete duties or uses any special skills "upon information and belief" simply because she has not personally seen him do so. *Iqbal*, 556 U.S. at 678 (a claim must be plausible on its face); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) ("A plaintiff still must … through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief."); *see also Renstrom v. Nash Finch Co.*, 787 F. Supp. 2d 961, 967 (D. Minn. 2011) (female's Equal Pay Act claim was dismissed because two male employees in the same title *but different work locations* from the female were not proper comparators) (emphasis added).

### 3. *Pay difference is not based on sex.*

In her Response, Boyd also argues she can establish a *prima facie* case that a wage disparity exists by merely identifying one or more comparator who are of the opposite sex and are paid at a higher rate. Response at p. 9. However, not only does this oversimplification thwart the entire premise of the Federal and Illinois EPAs, but the District Court cases from Kansas and Texas upon which Boyd relies are factually distinguishable.

It is irrefutable that the entire premise of the Equal Pay Act statutes is to remedy pay differences "*between employees on the basis of sex.*" 29 U.S.C. §206(d); 820 ILCS 112/10(a) (emphasis added). A claim under the EPA requires a "causal relationship between sex and pay," and "if the difference is due to a factor unrelated to gender, there is no violation." *Lindale v. Tokheim Corp.*, 145 F.3d 953, 957 (7th

10

Cir. 1998). Where an individual is paid more than both men and women, therefore, it cannot be said that the difference is based on sex and a violation of the EPA. *See Parks v. Speedy Title & Appraisal Review Services*, 318 F. Supp. 3d 1053, 1070 (N.D. Ill. July 11, 2018) ("By alleging that she was paid less than *both* male and female coworkers, Plaintiff has failed to allege the first element of an Equal Pay Act violation.") (Emphasis added).

Rather than acknowledge this Court's precedential decision in *Parks*, Boyd goes on to cite *Gutierrez v. City of Converse*, 2020 WL 156707, at *3 (W.D. Tex., Jan. 10. 2020), which quotes *Lenihan v. Boeing Co.*, 994 F. Supp. 776, 799 (S.D. Tex. 1998), and *Merrill v. Cintas Corp.*, 941 F. Supp. 1040, 1044 n.4 (D. Kan. 1996) in support of her argument that identifying one male comparator who earns more than she does is enough to plead the *prima facie* elements of an EPA claim. Notably, in *Gutierrez* all of the male comparators – including those who earned less than the plaintiff and the one male who earned more than she did – all held the same title as the plaintiff. *Gutierrez v. City of Converse*, 2020 WL 156707, at **1-3 (Plaintiff and all male comparators were Firefighter for the City of Converse Fire Department). Similarly, the plaintiff in *Lenihan* worked in the same equipment management group as all of her male comparators, all of whom earned more than she did, and the plaintiff in *Merrill* was hired by the same company into the same title, at the same time as her male comparators, though one male comparator started at the same salary that she did. *Lenihan v. Boeing Co.*, 994 F. Supp. 776, 800 (S.D. Tex. 1998); *Merrill v. Cintas*

11

*Corp.*, 941 F. Supp. 1040, 1042 (D. Kan. 1996).

In this case, Boyd would have the Court believe the men in her title and her City department (some of whom earn the same or less than she does) do not perform the same work that she does, yet it should accept that a man in a different title and different City department does perform substantially similar work for more pay. Cherry-picking a single alleged comparator in an effort to present discriminatory pay is not sufficient to make out a *prima facie* case under the EPA. *See Crawford v. Indiana Harbor Belt R. Co.*, 461 F.3d 844, 846 (7th Cir. 2006); *Butler v. New York Health & Racquet Club*, 768 F.Supp.2d 516, (S.D.N.Y. Jan. 26, 2011) ("[T]he problem with comparing [a] plaintiff's pay only to that of a single male employee is that it may create the impression of an [EPA] violation where no widespread gender discrimination exists.") (quoting *Lavin–McEleney v. Marist Coll.*, 239 F.3d 476, 481 (2d Cir. 2001).)

It is indisputable as a matter of public record that both females and males comprise the mailroom staff at DAIS in the title of Unit Assistant. *See* Exhibit A in support of the Motion. In fact, Boyd earns more than some of the men in her same title and at her same City department. *Id.* Accordingly, the fact that the Concrete Laborer (in a different title and different City department) earns more than *both* men and women in Boyd's title at DAIS makes any alleged pay disparity based on sex implausible and dooms Boyd's claims. *See Parks*, 318 F. Supp. 3d at 1070. Any pay disparity between Boyd and her alleged male comparator is more plausibly based on a variety of reasons (even beyond skills, knowledge, and experience, being in a

12

different bargaining unit, different City department, under different supervisors, etc.) other than sex.

### B. Punitive damages are not recoverable and should be stricken.

Lastly, Boyd fails to address the City's argument that punitive damages are not recoverable against municipal entities and any such argument is now waived. *Allian v. Allian*, No. 18 C 3825, 2018 WL 6591422 at *5 (N.D. Ill. December 14, 2018) ("Perfunctory and undeveloped arguments are waived as are arguments unsupported by legal authority"), *quoting M. G. Skinner & Assoc. Ins. Agency v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017). For this and reasons identified in the Motion, Boyd's request for punitive damages should therefore be stricken.

### III. Conclusion

For the foregoing reasons, Defendant City of Chicago respectfully requests the Court dismiss Plaintiff Angela D. Boyd's Second Amended Complaint *with prejudice*, and such other and further relief the Court deems appropriate.

Dated: August 4, 2021

Respectfully submitted,

CELIA MEZA
Corporation Counsel of the City of Chicago

By: *s/ Kristen Woytowicz*
KRISTEN WOYTOWICZ
DEREK R. KUHN
Assistants Corporation Counsel

City of Chicago
Department of Law
Employment Litigation Division
2 North LaSalle Street, Suite 640
Chicago, Illinois 60602
(312) 744-0428/0898
Kristen.woytowicz3@cityofchicago.org
Derek.kuhn@cityofchicago.org