## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ANGELA D. BOYD,          )
                                     )
              Plaintiff,      )
                                     )
            v.            )      20 C 710
                                     )
CITY OF CHICAGO, et al.,     )
                                     )
              Defendants.   )

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter is before the Court on Defendant City of Chicago's ("City") Motion for Summary Judgment under Federal Rule of Civil Procedure 56. For the reasons set forth below, the City's Motion is granted.

## BACKGROUND

In her two-count Second Amended Complaint, Plaintiff Angela Boyd brings claims against her employer, the City, alleging violations of the Illinois Equal Pay Act of 2003 ("IEPA"), 820 ILCS 112/1 *et seq*., and the federal Equal Pay Act ("EPA"), 29 U.S.C. § 206(d) *et seq*. The City moves for summary judgment on both claims.

In resolving a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). The following facts are taken from the record and are undisputed unless otherwise noted.

Boyd is a Unit Assistant in the City's Department of Assets, Information and Services ("AIS")[1]. She is a member of the City's eight-person mailroom staff comprised of four men and four women. Unit Assistants are represented by the American Federation of State, County and Municipal Employees Council 31 ("AFSCME"), which is the exclusive bargaining agent for the purpose of establishing salaries, wages, hours of work, and all other terms and conditions of employment for its represented titles pursuant to its collective bargaining agreement ("CBA") with the City (the "AFSCME CBA"). The AFSCME CBA establishes the rates of pay and salary schedules for all represented titles based on grades and steps contained therein.

Unit Assistants are supervised by Supervising Clerk Jeffery Wilson and are each assigned to a delineated mail route that they complete every day. All Unit Assistants perform the same duties, the only difference being the locations included on the route to which they are each assigned.

Unit Assistants are based out of the AIS mail facility located at 1869 W. Pershing Road, where they begin and end their shift. At the start of their shift, Unit Assistants retrieve the mail for their route, process mail and packages using a postage machine, and load the mail into their assigned vehicle. Unit Assistants then deliver the mail and pick up mail from the locations on their assigned routes.

Unit Assistants, including Boyd, are required to be able to lift and carry items weighing up to 35 pounds. Wilson would not assign a Unit Assistant to carry anything

---

[1] Formerly the Department of Fleet and Facility Management ("2FM").

2

weighing over 35 pounds and, if they were to encounter an item weighing over 35 pounds along their assigned route, they are supposed to call Wilson who would request the Labor supervisor have an AIS Laborer (whose job description requires the ability to lift up to 100 pounds) to lift or carry the item. As Boyd is aware, lifting an item weighing over 35 pounds as a Unit Assistant would be considered "acting out of title," which she is not supposed to do, although she does so on occasion because she finds it faster and easier than requesting a Laborer to come lift the items.

During her tenure as a Unit Assistant, Boyd has observed several[2] male City employees carrying mail at various City office locations. In particular, Boyd has observed Romell Shorter, a Concrete Laborer with the City's Department of Transportation ("CDOT"), in the mail room multiple times a week, and on the street at some of the places Unit Assistants go. Shorter's title is represented by the Laborers International Union of Northern America (LiUNA!), County, Municipal Employees', Supervisors' and Foremen's Union Local 1001 and Water Pipe Extension, Bureau of

---

[2] In addition to Romell Shorter, Boyd identified Michael Evans, an Assistant Commissioner with the City's Department of Business Affairs and Consumer Protection, an unidentified Firefighter for the City's Fire Department, and Carl Carter, a Construction Laborer with the City's Department of Water Management, as comparators, who she says she observed carrying mail at various city office locations. However, Boyd's response brief does not mention the unidentified firefighter and only mentions Evans once. And as for Carter, any facts asserted in Boyd's response brief are disregarded as they are not presented in a manner that complies with Local Rule 56.1. *See Bolden v. Dart*, 2013 WL 3819638, at *4 (N.D. Ill. 2013) ("[F]acts may be considered on summary judgment only if they are presented in a compliant Local Rule 56.1 statement or response.") (collecting cases). Even if the Court were to consider the facts Boyd puts forth in her response pertaining to Carter (which are largely supported only by inadmissible hearsay evidence), Boyd fails to develop any argument about the similarity of their duties, responsibilities, and working conditions. The Court therefore deems any argument as to these three individuals waived. *See De v. City of Chicago*, 912 F. Supp. 2d 709, 733 (N.D. Ill. 2012) ("[T]he opposing party waives any argument that it does not present and develop in its memorandum of law in opposition to summary judgment.").

3

Engineering Laborers' Local 1092 under its collective bargaining agreement with the City (the "Laborers' CBA"). The Laborers' CBA provides that represented titles shall receive the prevailing wage rate of payment, which is established by the Prevailing Wage Act, 820 ILCS 130/1, *et seq.,* and certain salary schedules.

Shorter has worked for the City within CDOT since 2001, initially as a cement mixer, then as seasonal Concrete Laborer, and has worked year-round as a Concrete Laborer since April 8, 2015. To become a Concrete Laborer for CDOT, Shorter had to undergo a physical test demonstrating his ability to carry over 100 pounds, among other physical tests, because all Concrete Laborers are required to be able to lift up to 100 pounds. Beginning in approximately 2015, in addition to his concrete duties, Shorter inherited delivery duties for CDOT when the individual who previously performed them retired. CDOT has a laborer perform these additional duties because oftentimes the items require carrying heavy items, like boxes weighing 50 pounds.

Shorter is assigned to a concrete crew and receives orders daily on what needs to be done. These orders can be given in person, or through email or texts. Shorter starts his workday in the CDOT yard, where he loads 75-pound steel plates and performs other heavy lifting activities. Throughout the day, in addition to mail and delivery responsibilities, he is "all over" the City depending on the various supervisors asking him to perform various tasks, including pouring and grading cement, and delivering 35–40 pound boxes and other items like chairs, phones, tickets, and equipment. While there are certain stops on his route Shorter anticipates making each day in performing

delivery duties, the route itself changes and he "squeezes" in the delivery duties when he has a break because he is constantly moving and being asked to perform cement work.

Shorter estimated that 65-70%[3] of his time is spent on delivery duties, although that amount varies, and he uses skills required as a Concrete Laborer for a "good portion" of his daily jobs with CDOT. He is required to keep work boots and a shovel in his assigned vehicle so that he can be pulled onto a crew location to grade concrete at any moment before returning to his delivery duties. He is also regularly called in on weekends when crews are shorthanded to perform concrete work.

CDOT Deputy Commissioner Michael Drake testified that crew foremen are responsible for filling out "crew sheets", which reflect what the crew did on a given day. Some foremen are better than others at documenting, and the crew sheets only show what the crew did on a specific day, not what each individual crewman did. There is no way to tell from the crew sheets how much time Shorter spent on his concrete duties and his delivery duties. Drake has never been out on a work site with Shorter.

## **LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[3] Boyd attempts to rebut this claim by pointing out that Shorter also testified that his shift is from 7:00 a.m. to 3:30 p.m., and he delivers mail from 7:00 a.m. to about 2:00 p.m.—or about 85% of his shift. But the cited testimony does not support the claim that *all* Shorter does between 7:00 a.m. and 2:00 p.m. is deliver mail. Shorter testified that he is always on the move and squeezes the deliveries in between his concrete tasks, and the time it takes to make all of his deliveries varies from day to day.

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). In determining whether summary judgment is appropriate, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). But the nonmovant "is only entitled to the benefit of inferences supported by admissible evidence, not those supported by only speculation or conjecture." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (cleaned up).

It is not the role of the Court to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (cleaned up). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. And the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

6

Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine issue and entitles the movant to judgment as a matter of law. The party opposing the motion for summary judgment is then required to file "any opposing affidavits and other materials referred to in [Federal Rule of Civil Procedure 56(e)]" and a "concise response" to the movant's statement of facts containing "any disagreement, specific references to the affidavits, parts of the record, and other supporting materials." L.R. 56.1(b)(1), (3).

"A general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). Local Rule 56.1(b)(3)(C) is not satisfied by "purely argumentative denials," *id.*, or "evasive denials that do not fairly meet the substance of the material facts asserted," *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). If a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Similarly, if a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). "The purpose of the 56.1 statement is to identify for the Court

the evidence supporting a party's factual assertions in an organized manner[;] it is not intended as a forum for factual or legal argument." *Malec*, 191 F.R.D. at 585.

## DISCUSSION

In her Second Amended Complaint, Boyd alleges the City violated the EPA and the IEPA by underpaying Boyd as compared to her male colleagues. "The [Illinois Equal Pay Act] and the federal Equal Pay Act are evaluated using the same standards." *Hubers v. Gannett, Inc*., 2019 WL 1112259, at *4 n.8 (N.D. Ill. 2019); *see also Karlo v. St. Augustine Coll.*, 2021 WL 2156438, at *2 (N.D. Ill. 2021). Therefore, the Court's summary judgment analysis is the same as to Boyd's EPA and IEPA claims.

### I.     Local Rule 56.1

As a preliminary matter, Boyd's summary judgment submissions suffer from numerous violations of Local Rule 56.1. Not only did Boyd fail to file her own Local Rule 56.1 statement of additional facts, her responses to the City's Local Rule 56.1 Statement are riddled with improper denials and extraneous facts and legal arguments. Additionally, in her brief, Boyd improperly attempts to introduce new facts and cites directly to record evidence rather than the Local Rule 56.1 Statement. "District courts have no obligation to go on a 'treasure hunt,' sifting for nuggets in a stream of exhibits, looking for facts not found in the Rule 56.1 statements." *LaRue v. Obaisi*, 2021 WL 3290919, at *6 (N.D. Ill. 2021) (citing *BI3, Inc. v. Hamor*, 2011 WL 1231156, at *2 (N.D. Ill. 2011)); *see also Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 442 (7th Cir. 2011) (noting that it "is certainly within a district court's prerogative" to decline to consider

"any facts that were not contained in the parties' Rule 56.1 statements"). Accordingly, where facts asserted in the City's Local Rule 56.1 Statement are not properly disputed, the Court deems those facts admitted. Legal arguments within Boyd's responses are disregarded. *See Malec*, 191 F.R.D. at 585. The Court also disregards additional facts presented in Boyd's brief or response to the City's statement of facts, rather than in a Local Rule 56.1(b)(3)(C) statement of additional facts. *See id.* at 584; *see also Ciomber v. Coop. Plus, Inc.*, 527 F.2d 635, 643–44 (7th Cir. 2008).

## II. The City's Motion

Moving on, to establish a prima facie case of wage discrimination under the EPA, Boyd must show (1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort, and responsibilities, and (3) the work was performed under similar working conditions. *Cullen v. Indiana Univ. Bd. of Trs.*, 338 F.3d 693, 698 (7th Cir. 2003); *Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 685 (7th Cir.1998). In order to determine whether or not two jobs are equal, we look to whether the jobs have a "common core of tasks, i.e., whether a significant portion of the two jobs is identical." *Id.* (internal quotation marks omitted). Once a plaintiff establishes a "common core" of tasks, we ask whether any additional tasks make the jobs "substantially different." *Id.* When assessing job duties, each of the elements listed in the EPA (skill, effort, and responsibilities) must be met individually to establish a prima facie case. *Id.*; *see also* 29 C.F.R. § 1620.14. We look to the actual job duties

performed by each employee, not to his or her job description or title. *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 695 (7th Cir. 2006).

Boyd has not established that Shorter is an adequate comparator for purposes of the EPA. Even if we accept that Boyd's and Shorter's jobs share a "common core" of tasks, Shorter has additional duties that make the two jobs "substantially different." Of course, "[a]dditional duties may not be a defense to the payment of higher wages to one sex where the higher pay is not related to the extra duties." 29 C.F.R. § 1620.20. An employer cannot successfully assert an extra duties defense if, for example, employees of the higher paid sex receive the higher pay without doing the extra work, the extra duties do not exist, or the extra task "consumes a minimal amount of time and is of peripheral importance." *Id*.

Shorter testified that 65-70% of his time "on the clock" is spent on deliveries and the rest of his time is spent on tasks related to concrete work. Boyd argues that the City has not put forth any evidence beyond Shorter's own testimony that his additional concrete duties actually exist. For example, although Shorter testified that there "should" or "might" be written records of his work on various concrete jobs, the City produced none. Shorter also testified that supervisors would email and text him daily assignments, yet the City did not produce any texts or emails. Boyd argues the absence of such written records creates a disputed question of fact that must be resolved by a jury.

But at summary judgment, Boyd "is only entitled to the benefit of inferences supported by admissible evidence, not those supported by only speculation or conjecture." *Grant*, 870 F.3d at 568 (cleaned up). The evidence of record establishes that Shorter regularly performs additional concrete work requiring skills and effort substantially different than that of delivering mail.

Assuming, *arguendo*, that Boyd established a prima facie case, the burden shifts to the City to establish that the difference in pay was pursuant to any one of four statutory exceptions, namely: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1); *Warren v. Solo Cup Co.*, 516 F.3d 627, 630 (7th Cir. 2008). "The fourth exception is a 'broad, 'catch-all' exception and embraces an almost limitless number of factors, so long as they do not involve sex.'" *Id.* (quoting *Fallon v. Illinois*, 882 F.2d 1206, 1211 (7th Cir. 1989)). However, the stated justification "must also be bona fide. In other words, an employer cannot use a gender-neutral factor to avoid liability unless the factor is used and applied in good faith." *Id.* Indeed, the burden is on the defendant to "prove, not just assert," that the stated nondiscriminatory justification is the reason for the pay disparity at summary judgment. *King v. Acosta Sales & Mktg., Inc.*, 678 F.3d 470, 474 (7th Cir. 2012).

The City argues it met its burden here because the evidence shows that Boyd's wages as a Unit Assistant are determined under the AFSCME CBA, whereas Shorter's

11

wages are determined by the Laborers' CBA, which relies on the Prevailing Wage Act, 820 ILCS 130/1 *et seq.* Boyd correctly notes, however, that "[t]he establishment by collective bargaining or inclusion in a collective bargaining agreement of unequal rates of pay does not constitute a defense available to either an employer or to a labor organization." 29 C.F.R. § 1620.23. The City accuses Boyd of "confus[ing] a CBA which perpetuates discrimination between sexes versus multiple union contracts providing for salary determinations by various separately represented titles." Dkt. # 94, at 7. We believe the City construes the regulation too narrowly and agree with Boyd that the existence of the two collective bargaining agreements is not a defense.

Nevertheless, assuming Boyd established her prima facie case, the City is entitled to summary judgment because it has shown a gender-neutral reason for Shorter's higher pay: Shorter's duties, although in large part similar to Boyd's, include additional work that makes the two jobs substantially different. In arguing that Shorter spends the majority of his shift making deliveries, Boyd implicitly concedes that Shorter does perform concrete work for at least some of his shift. Boyd, relying only on the absence of written records of Shorter's concrete work, failed to properly refute the City's evidence of Shorter's extra duties as a Concrete Laborer.

Additionally, the Court is not persuaded by Boyd's contention that Shorter's additional concrete work duties are "minimal and not of significant importance." The amount of time Shorter spends on concrete work varies each day and Shorter testified that approximately two to three times a week he is not able to complete all of his

12

delivery stops before the end of his shift because he is called to do concrete work at crew locations. Shorter also gets called in on weekends to perform concrete work. Moreover, concrete work involves an entirely different skill set than mail delivery. The City has met its burden in establishing a bona fide, gender-neutral reason for the pay disparity between Boyd and Shorter.

## CONCLUSION

For the foregoing reasons, the City's Motion for Summary Judgment [89] is granted. Judgment is entered in favor of the City on Boyd's EPA and IEPA claims. Civil case terminated.

It is so ordered.

Dated: 5/24/2023

Charles P. Kocoras
United States District Judge

13